IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **TRADE WEST, INC.**, a Hawaii Corporation, | ) Civ. No. 12-00606 ACK-BMK<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| **DOLLAR TREE, INC., DOLLAR TREE STORES, INC., and GREENBRIER INTERNATIONAL, INC.**, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ORDER DENYING MOTION TO DISMISS**

For the following reasons, the Court DENIES WITHOUT PREJUDICE Defendants' Motion To Dismiss the Amended Complaint.

**PROCEDURAL BACKGROUND**

Plaintiff Trade West, Inc. filed a complaint on November 9, 2012, alleging that Defendants Dollar Tree, Inc. ("Dollar Tree"), Dollar Tree Stores, Inc. ("DT Stores"), and Greenbrier International, Inc. (collectively, the "Dollar Tree Entities") willfully infringed on Trade West's trademarks and copyrights. (Doc. No. 1.) On December 12, 2012, the Dollar Tree Entities filed a motion to dismiss the complaint for lack of personal jurisdiction. (Doc. No. 6.) On January 2, 2013, Trade West filed a First Amended Complaint, the currently operative complaint, adding further jurisdictional allegations. (Doc. No. 9 ("Compl.").)

The Dollar Tree Entities filed the instant Motion To Dismiss the Amended Complaint on January 31, 2013, again arguing that this Court lacked personal jurisdiction over any of the

Dollar Tree Entities. (Doc. No. 19.) The Motion was supported by declarations from counsel, a Vice-President for all three Dollar Tree Entities ("Mallas Decl."), and the Director of Sales Promotion for Greenbrier ("Rentz Decl."), as well as various exhibits. (Id.) On April 8, 2013, Trade West filed an Opposition to the Motion ("Opp'n"), which was supported by a declaration from Trade West's President ("Matthews Decl.") and various exhibits. (Doc. No. 38.) The next day, Trade West filed a declaration from counsel in support of the Opposition. (Doc. No. 39.) The Dollar Tree Entities filed a Reply in support of their Motion on April 15, 2013, which was supported by a second declaration from counsel ("Goldmark 2d Decl."). (Doc. No. 40.)

A hearing on the Motion was held on April 29, 2013.

## **FACTUAL BACKGROUND**[1]

Trade West alleges that the Dollar Tree Entities willfully infringed on Trade West's trademarks and copyrights, including its "hibiscus with fern" trademark ("Hibiscus Trademark") and its copyrighted "Fluffy Plumeria Lei" design. (Compl.) The Hibiscus Trademark consists of an artificial hibiscus flower attached to an artificial fern leaf, both of which are then attached to the various types of artificial-flower lei manufactured by Trade West, including the Fluffy Plumeria Lei. (See Compl. Ex. B.)

---

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

**I.   The Parties**

Trade West is one of the largest suppliers of artificial-flower leis in the nation, and has been engaged in that business for approximately four decades. (Matthews Decl. ¶ 3.)[2/] Trade West's leis, carrying its Hibiscus Trademark, are widely available in more than 1,200 retail stores across the United States. (Id. ¶ 4.) Trade West markets its leis domestically through distributors including Tropical Sun Imports, which is based in Colorado. (Id. ¶ 11; Goldmark 2d Decl., Ex. 3.)

Dollar Tree is a holding company with its headquarters and principal place of business in Chesapeake, Virginia. (Mallas Decl. ¶ 3.) Both DT Stores and Greenbrier are a wholly-owned subsidiaries of Dollar Tree. (Id. ¶¶ 4-5.) Greenbrier is "the product sourcing entity" for the Dollar Tree Entities, while DT Stores conducts all of the Dollar Tree Entities' US retail sales. (Id.)

None of the Dollar Tree Entities have any stores, offices, staff, or employees in Hawaii. (Id. ¶ 6.) None of their advertising targets Hawaii. (Id.) DT Stores has offered shipping to Hawaii through its website since 2009; from 2009 through

---

[2/] As the Dollar Tree Entities correctly noted, the Matthews Declaration is full of legal conclusions parroted from the Complaint and factual allegations about which the declarant has no personal knowledge. (See Reply at 11-12.) The Court has ignored those portions of the declaration, and cautions Trade West that any declarations it files in the future must be more carefully drafted, or risk being stricken. The Matthews Declaration does contain some proper factual attestations, however, and the Court gives those statements due weight.

October 2012, its sales to Hawaii comprised a miniscule 0.00019% of its total sales. (Id. ¶ 8.)

## II. Prior Contacts Concerning Artificial-Flower Leis

In late 2003 and early 2004, Trade West's president, Thomas Matthews, exchanged letters with counsel for DT Stores, discussing a possible infringement on Trade West's copyright on another type of lei, not one at issue in this suit. (Matthews Decl. ¶¶ 25-26 & Exs. 1, 3, 4 & 5.) On March 25, 2004, Matthews sent DT Stores' counsel copies of a preliminary injunction and temporary restraining order that Trade West had obtained against a Chinese company to prevent alleged infringements of the Hibiscus Trademark. (Id. Ex 5.) DT Stores' counsel replied stating that it had received the letter and that DT Stores had checked its records for the vendor named in the preliminary injunction and temporary restraining order but had found no relevant records. (Id. Ex. 6.)

In 2008, Mike Bailey, a Divisional Merchandise Manager for Greenbrier (see id. Ex. 18 at 1), exchanged emails with Scott Perry, an employee of Tropical Sun, Trade West's distributor, about possibly purchasing "luau items." (Id. Ex. 14.) In one email, Perry stated that he had sent Bailey copies of Tropical Sun's 2008 catalog. (Id.) Tropical Sun's 2008 catalog included a full page of Trade West's artificial-flower leis, including the Fluffy Plumeria Lei, all of which clearly displayed the Hibiscus Trademark. (Id. Ex. 15.) The emails do not, however, demonstrate that Bailey ever received or read the catalog.

4

On June 16, 2008, Perry sent Bailey an email stating, "I neglected to mention the IP issue with the hibiscus flower you are using on a few of your leis. This is a trademark we have held and enforced for many years." (Id. Ex. 16.) Bailey received and responded to that email. (Id.)

### III. **The Allegedly Infringing Leis**

In May 2012, Matthews spotted in a Dollar Tree store in Seattle an artificial-flower lei which he believed was an unauthorized copy of the Fluffy Plumeria Lei bearing an unauthorized copy of the Hibiscus Trademark (together, the "Accused Lei"). (Matthews Decl. ¶ 36.) In June 2012 he saw the Accused Lei at a Dollar Tree store in Las Vegas. (Id. ¶ 37.) In October 2012, he again saw the Accused Lei, this time at a booth at a trade fair in Canton, China. (Id. ¶ 39.) The Accused Lei in China bore Dollar Tree sales tags. (Id.) The vendor told Matthews that he supplied the Accused Leis to Dollar Tree, and that they were based on a design Dollar Tree had sent him to make for them. (Id. ¶ 40.)

Back in Hawaii, Matthews ordered what appeared to be the Accused Lei, SKU 865102, from Dollar Tree's website. (Id. ¶ 41.) The leis he received were the same design as those he had seen in Seattle and Las Vegas. (Id.)

On November 16, 2012, presumably after receiving notice of Trade West's potential claim,[3] Dollar Tree issued a "Pull &

---

[3] Trade West served its original complaint and summons on
(continued...)


Hold" letter directing its distribution centers and stores to stop sales of the artificial-flower lei SKU 865102. (Rentz Decl. ¶ 2 & Ex. A.)

## STANDARD

The Court's exercise of personal jurisdiction over a party may be challenged under Federal Rule of Civil Procedure ("Rule") 12(b)(2). The plaintiff bears the burden of showing that the Court has jurisdiction over the defendant. <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1223 (9th Cir. 2011). The Court may allow the plaintiff to submit affidavits, allow affidavits plus discovery, or conduct an evidentiary hearing. <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001).

When the Court rules without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" to avoid dismissal. <u>Washington Shoe Co. v. A-Z Sporting Goods Inc.</u>, 704 F.3d 668, 672 (9th Cir. 2012).[4/] The Court must take as true all uncontroverted facts in the complaint but may not assume the truth of allegations which are contradicted by affidavit. <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 653 F.3d 1066, 1073 (9th Cir. 2011). The Court must resolve all factual disputes in the plaintiff's favor. <u>Washington Shoe</u>,

---

(...continued)
the Dollar Tree Entities on November 21, 2012. (Doc. Nos. 4 & 5.)

[4/] "If the plaintiff succeeds in meeting that prima facie burden, then the district court may still order an evidentiary hearing or the matter may be brought up again at trial." <u>Fiore v. Walden</u>, 688 F.3d 558, 574 n.13 (9th Cir. 2011) (citation omitted).

704 F.3d at 672. Nonetheless, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." Fiore, 688 F.3d at 574-75.

### DISCUSSION

Although the burden is on the plaintiff to show that the court has personal jurisdiction over the defendant, "in the absence of an evidentiary hearing the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Washington Shoe, 704 F.3d at 671-72. Additionally, the Court resolves all disputed facts in favor of the plaintiff, in this case, Trade West. See id. at 672.

Because there is no applicable federal statue governing personal jurisdiction in this case, the Court applies Hawaii state law. See id. Hawaii's long-arm statute, Hawaii Revised Statutes § 634–35, reaches to the full extent permitted by the Constitution, Cowan v. First Ins. Co., 608 P.2d 394, 399 (Haw. 1980). The relevant question, therefore, is whether the requirements of due process are satisfied by the exercise of personal jurisdiction over the Dollar Tree Entities in Hawaii.

### I.  Due Process

Due process requires that to exercise jurisdiction over a non-resident defendant, the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316

7

(1945). The Ninth Circuit employs a three-part test to determine if a defendant has sufficient minimum contacts to be subject to specific personal jurisdiction[5]:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Washington Shoe, 704 F.3d at 672 (quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

As Trade West bears the burden of establishing the district court's jurisdiction over the Dollar Tree Entities, it must satisfy the first two prongs. Washington Shoe, 704 F.3d at 672. If it does so, then the Dollar Tree Entities must come forward with a "'compelling case' that the exercise of jurisdiction would not be reasonable." CollegeSource, 653 F.3d at

---

[5] Trade West does not argue that there is any basis for asserting general personal jurisdiction over any of the Dollar Tree Entities in Hawaii.

1076 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

### A.   Purposeful Direction

The plaintiff may satisfy the first prong by demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum. The Ninth Circuit typically applies the purposeful direction test in tort cases such as this. See Washington Shoe, 704 F.3d at 672-73 & n.2. The test inquires "whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Id. (quoting Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

The "purposeful direction" or "effects" test is based on Calder v. Jones, 465 U.S. 783 (1984). It "requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Washington Shoe, 704 F.3d at 673 (quoting Mavrix Photo, 647 F.3d at 1228). Thus, courts may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state. Washington Shoe, 703 F.3d at 673 (citing Yahoo! Inc., 433 F.3d at 1206; Panavision Int'l, L.P. v. Toeppen, 141

F.3d 1316, 1320 (9th Cir. 1998) ("It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents.")).

In this case, the purposeful direction analysis is squarely controlled by the Ninth Circuit's recent decision in Washington Shoe, 703 F.3d 668. The Court will address each of the three elements in turn.

### 1. Intentional act

First, the Court addresses whether the Dollar Tree Entities "committed an intentional act" when they, allegedly, willfully infringed Trade West's copyright. See Washington Shoe, 704 F.3d at 673-74. "[A]n intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Id. at 674.

Trade West alleges that the Dollar Tree Entities had a design which they knew infringed on Trade West's copyrights manufactured in China and then sold it in their stores. (Compl. ¶¶ 30, 34, 40.) The Court must take as true all uncontroverted factual allegations in the Complaint, and must resolve all factual disputes in Trade West's favor. See CollegeSource, 653 F.3d at 1073; Washington Shoe, 704 F.3d at 672. The Dollar Tree Entities, strangely, do not contradict through affidavits the

foregoing allegations.[6/] Based on the foregoing, Trade West has presented a prima facie case that the Dollar Tree Entities committed an intentional act.

    **2. Expressly aimed**

Determining whether the Dollar Tree Entities' conduct was expressly aimed at Hawaii "depends to a great degree on the allegations of a willful copyright violation." Washington Shoe, 704 F.3d at 674. The Ninth Circuit has held that Calder "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." Washington Shoe, 704 F.3d at 674 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). Nonetheless, the Ninth Circuit has repeatedly stated that the "express aiming" requirement is satisfied, and specific jurisdiction exists, "when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th

---

[6/] The Dollar Tree Entities argue that Mr. Matthews' declaration as to what the Chinese vendor said to him is inadmissible hearsay. (Reply at 11-12.) That may be true, but it is irrelevant where the Dollar Tree Entities have failed to deny most of the relevant allegations in the Complaint. Indeed, the only one of Trade West's jurisdictional allegations that the Dollar Tree Entities have denied through affidavits is the claim that the Dollar Tree Entities continued to sell the Accused Leis even after receiving notice of Trade West's complaint. (Compl. ¶ 43.) The Dollar Tree Entities present an affidavit and supporting documentary evidence that they stopped selling the Accused Leis on November 16, 2012 (Rentz Decl. ¶ 2 & Ex. A), which was in fact a few days before Trade West's original complaint was formally served on them (see Doc. Nos. 4 & 5).

Cir.2002) (quoting Bancroft & Masters, 223 F.3d at 1087); see also id. at 1087 ("'[E]xpress aiming' encompasses wrongful conduct individually targeting a known forum resident.").

Furthermore, the Ninth Circuit recently held in Washington Shoe that, "[p]articularly in the case of a willful copyright infringement, the intentional act constituting the violation may occur solely within one state while the known impact of that copyright infringement is directed at another state." 704 F.3d at 675. "Because the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a willful infringement is necessarily directed there as well. Id. at 678. "When copyrights are held by corporations," the "impact of an intentional violation" of the copyright is "necessarily directed" at the corporation's location. Id.

Trade West's evidence demonstrates that Trade West sent DT Stores, through its counsel, written notice of Trade West's Hibiscus Trademark, and that DT Stores' counsel received and reviewed that notice. (See Matthews Decl. Exs. 5 & 6.) Trade West's evidence also demonstrates that DT Stores' counsel sent letters to Trade West at Trade West's Hawaii address. (Id.) It is reasonable to infer from this evidence that DT Stores knew that Trade West was located in Hawaii and that it owned the rights to the Hibiscus Trademark.

Trade West has also presented evidence suggesting that Mike Bailey, one of Greenbrier's managers, was sent a catalog

12

containing large color photographs of Trade West's artificial-flower leis, including the one at issue here, which were displaying the Hibiscus Trademark. (Id. Exs. 14 & 15.) Moreover, Trade West has shown that Trade West's distributor later warned Bailey that the hibiscus flower design was trademarked. (Id. Ex. 16.) It is reasonable to infer from this evidence that Bailey saw the Hibiscus Trademark and knew that it was trademarked. The Dollar Tree Entities correctly note that Trade West has presented no direct evidence that Bailey ever saw the hibiscus design or knew it to be trademarked; but, again, the Dollar Tree Entities have not presented any affidavits to contradict Trade West's allegations.

Finally, Trade West has presented evidence that DT Stores sold the Accused Lei in its stores and on its website (Matthews Decl. ¶¶ 36-37, 41), and the Dollar Tree Entities have confirmed that Greenbrier sources the products for DT Stores to sell (Mallas Decl. ¶ 5).

Trade West has not presented any evidence that would suggest that either Dollar Tree or Greenbrier knew that Trade West, specifically, owned the Hibiscus Trademark or that the owner of the trademark was located in Hawaii. Trade West has alleged both those facts in its Complaint however (see Compl. ¶¶ 27, 30, 32, 41-42) and, once again, the Dollar Tree Entities have failed to contradict those allegations. Again, the Court must take as true all uncontroverted factual allegations in the Complaint. CollegeSource, 653 F.3d at 1073.

The Dollar Tree Entities note that they make very few sales at all to Hawaii, and that the only Accused Leis sold in Hawaii were the ones that Trade West's president bought to compare with those he had seen in Seattle and Las Vegas. The Dollar Tree Entities also note that Trade West has presented no evidence of the Accused Leis directly competing with Trade West's leis anywhere, let alone in Hawaii. (Reply at 1, 14.) These arguments are irrelevant, however. In Washington Shoe, the defendant shoe store sold shoes only in Arkansas. 704 F.3d at 671. While the defendant shoe store bought other types of shoes from the plaintiff, it did not buy the children's rain boots that it allegedly copied; rather, it sold only its own infringing copies of those rain boots. Id. The Ninth Circuit nonetheless found express aiming based on the defendant's alleged willful violation of the plaintiff's copyright. Id. at 670 (finding personal jurisdiction where defendant's "only relevant contact with the state is a claim that it willfully violated a copyright held by a [state] corporation").

The Court finds that, under the Ninth Circuit's decision in Washington Shoe, Trade West has made sufficient allegations, on the current record, to show that the Dollar Tree Entities' conduct was expressly aimed at Hawaii.

### 3. Causing harm that the defendants know is likely to be suffered in the forum state

"The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable." Washington Shoe, 704 F.3d at 679 (quoting Mavrix Photo, 647 F.3d

at 1231.) It is foreseeable that the loss will be inflicted where the copyright holder has its principal place of business - here, Hawaii. See id. at 679.

In sum, the Court notes that this is a much less clear-cut case than Washington Shoe. Nonetheless - thanks primarily to the Dollar Tree Entities' failure to deny Trade West's jurisdictional allegations - the Court finds that Trade West has met its relatively low burden at this stage of the litigation, and has presented a prima facie case that the Dollar Tree Entities "purposefully directed" their activities at Hawaii.

### B. Arising out of Forum-Related Activities

There is no question here that Trade West's claims against the Dollar Tree Entities "arise out of" the Dollar Tree Entities' alleged forum-related activities. Courts in the Ninth Circuit use a "but for" test to determine whether a claim arises out of forum-related activities. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007) (plaintiff must show that he "would not have suffered an injury 'but for' [defendant's] forum-related conduct"). In this case, Trade West's claims are directly based on the Dollar Tree Entities' alleged activities directed toward Hawaii.

### C. Fair Play and Substantial Justice

Since Trade West has - barely - satisfied both the first and second prongs of the analysis for specific personal jurisdiction, the burden now shifts to the Dollar Tree Entities to "'present a compelling case' that the exercise of jurisdiction

15

would not be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801-02 (9th Cir. 2004) (quoting Burger King, 471 U.S. at 476-78). In making a reasonableness determination, the Court must consider the following factors:

    (1) The extent of the defendants' purposeful interjection into the forum state's affairs;

    (2) the burden on the defendant of defending in the forum;

    (3) the extent of conflict with the sovereignty of the defendants' state;

    (4) the forum state's interest in adjudicating the dispute;

    (5) the most efficient judicial resolution of the controversy;

    (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

    (7) the existence of an alternative forum.

Fiore, 657 F.3d at 854. The Court balances all seven factors, recognizing that none of the factors is dispositive in itself. Id.

**1. Extent of purposeful interjection**

The Ninth Circuit has recognized that "circumstances may exist where 'the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction.'" Fiore, 688 F.3d at 583 (citation omitted). This may well be a case in which the Dollar Tree Entities' "level of purposeful interjection into" Hawaii is so slight that it is not reasonable to exercise personal jurisdiction over them here. "The smaller the element of purposeful interjection, the less is jurisdiction to be

16

anticipated and the less reasonable its exercise." Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1271 (9th Cir. 1981.) This factor weighs in favor of the Dollar Tree Entities. The Court notes once more, however, that the Dollar Tree Entities have failed to deny most of Trade West's jurisdictional allegations.

### 2.  Burden on defendant

The Court recognizes that "a defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" Panavision, 141 F.3d at 1321, 1323. Moreover, courts in this Circuit have observed that "[r]ecent advancements in communication and transportation . . . have greatly reduced the inconvenience once associated with defending in another forum." Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1240 (D. Haw. 2003) (citing Panavision, 141 F.3d at 1323). The Dollar Tree Entities have no offices, employees, or real or personal property in Hawaii. Accordingly, litigating this matter in Hawaii imposes a burden on the Dollar Tree Entities. This factor slightly favors the Dollar Tree Entities.

### 3.  Conflict with another state's sovereignty

There is no evidence presented to demonstrate a conflict with the sovereignty of Virginia, the Dollar Tree Entities' principal place of business. Moreover, the sovereignty

of a defendant's state is not a significant consideration in actions between citizens of the United States. See <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 841 (9th Cir. 1986). This factor is neutral.

### 4.   Interest of forum state

"Hawaii has a strong interest in providing an effective means of redress for its residents who are tortiously injured." <u>Resnick v. Rowe</u>, 283 F. Supp. 2d 1128, 1141 (D. Haw. 2003) (citation omitted). "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." <u>Burger King</u>, 471 U.S. at 473. Trade West's principal place of business is in Hawaii. This factor weighs in Trade West's favor. See <u>Panavision</u>, 141 F.3d at 1323.

### 5.   Judicial efficiency

"[C]onsideration of the most efficient judicial resolution is 'no longer weighted heavily given the modern advances in communication and transportation.'" <u>Panavision</u>, 141 F.3d at 1323 (quoting <u>Caruth v. Int'l Psychoanalytical Ass'n</u>, 59 F.3d 126, 129 (9th Cir. 1995)). The Dollar Tree Entities' witnesses and documentary evidence are likely located in Virginia. Trade West's employees and documents are located in Hawaii. Trade West also anticipates trying to locate relevant evidence and witnesses in China, which, as Trade West notes, is closer to Hawaii than to Virginia. (Matthews Decl. ¶ 43-44.) This factor only slightly favors Trade West.

### 6. Importance of forum to plaintiff's interest

"[I]n evaluating the convenience and effectiveness of relief for the plaintiff, the Ninth Circuit has given little weight to the plaintiff's inconvenience." Panavision, 141 F.3d at 1324 (internal citations omitted)). Thus, although it may be more costly and inconvenient for Trade West to litigate this action in another forum, this factor weighs only slightly in favor of Trade West.

Trade West argues that this Court has special expertise that would be beneficial in this case because the case involves leis, which are a traditional Hawaiian craft. (Opp'n at 27.) The Court is unconvinced by this argument. The merits of Trade West's claims have little, if anything, to do with the cultural significance of leis, and require no specialized understanding of Hawaiian culture.

### 7. Existence of an alternative forum

The parties do not dispute that Trade West's claims could have been brought in Virginia. This factor weighs in favor of the Dollar Tree Entities.

### 8. Balancing

Taken as a whole, the Court finds that the Dollar Tree Entities have not presented a "compelling" case that the exercise of personal jurisdiction over them would be unreasonable. See Schwarzenegger, 374 F.3d at 801-02. The Dollar Tree Entities cite repeatedly to this Court's determination in DeLeon v. KBR, Inc., Civ. No. 11-00685, 2012 U.S. Dist. LEXIS 64738 (D. Haw. May 8,

2012). In DeLeon, however, the plaintiff failed to establish the defendant's purposeful interjection into Hawaii, and key witnesses were likely located in Iraq. Id. at *33-*36. Here, by contrast, key witnesses are likely located in China, and the plaintiff has established the defendants' personal interjection into Hawaii.

Nonetheless, the Court remains concerned about the issue of personal jurisdiction in this case. The Court notes that Trade West will have to prove that the Court's exercise of personal jurisdiction over the Dollar Tree Entities is proper, either before or at trial. The Court further notes that its present denial of the Dollar Tree Entities' motion shall be without prejudice.

## CONCLUSION

For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE Defendants' Motion To Dismiss the Amended Complaint (Doc. No. 19). Furthermore, since Defendants' original motion to dismiss (Doc. No. 6) remains open on the docket, the Court DENIES that motion as well, also without prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 30, 2013



_____
Alan C. Kay
Sr. United States District Judge

Trade W., Inc. v. Dollar Tree, Inc., Civ. No. 12-00606 ACK BMK, Order Denying Motion To Dismiss

20